# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-1525V
### Filed: March 25, 2025

---

ELIZABETH LUCAS,

                 Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                 Respondent.

---

*Courtney Christine Jorgenson, Siri & Glimstad, LLP, Phoenix, AZ, for petitioner.*
*Andrew Donald Downing, Downing, Allison, & Jorgenson, Phoenix, AZ, former counsel for petitioner.*
*Paul R. Brazil, Muller Brazil, LLP, Dresher, PA, former counsel for petitioner.*
*Rachelle Bishop, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On December 18, 2024, petitioner's departing counsel, Mr. Downing, filed the instant motion for an award of interim attorneys' fees and costs in the amount of $49,190.84. (ECF No. 68.) An additional motion for an award of interim attorneys' fees and costs in the amount of $18,581.51 had previously been filed by petitioner's initial counsel, Mr. Brazil. (ECF No. 41.) For the reasons discussed below and resolving both motions, I award petitioner interim attorneys' fees and costs in the reduced amount of amount of $65,346.10.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

## I.    Procedural History

On October 2, 2019, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffers a right shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus-diphtheria-pertussis ("Tdap") vaccination received on July 11, 2018.  (ECF No. 1.)  The case was originally assigned to the Special Processing Unit ("SPU").  (ECF Nos. 17-18.)

At the outset of the case, petitioner was represented by Paul R. Brazil.  (ECF No. 1.)  Mr. Brazil filed medical records on behalf of petitioner between October of 2019 and June of 2020.  (ECF Nos. 1, 11, 15, 21; Exs. 1-13.)  Thereafter, respondent filed a Rule 4(c) Report, recommending against compensation.  (ECF No. 29.)  Petitioner subsequently filed additional medical records, as well as records pertaining to a worker's compensation claim and a short-term disability claim.  (ECF Nos. 31, 39; Exs. 14-16.)

On May 12, 2023, Andrew D. Downing was substituted in place of Mr. Brazil as petitioner's counsel of record.  (ECF No. 42.)  Just prior to that substitution, Mr. Brazil filed a motion seeking an award of interim attorneys' fees and costs totaling $18,581.51, and respondent filed a response deferring to the court's discretion with regard to the appropriateness and amount of interim attorneys' fees and costs to be awarded.  (ECF Nos. 41, 44.)  The case was subsequently reassigned to the undersigned on June 21, 2023.  (ECF Nos. 45-46.)  Thereafter, I issued an order deferring ruling on petitioner's motion for interim attorneys' fees and costs "until such time as an award of attorneys' fees and costs is otherwise made to current counsel of record, whether on a final or interim basis."  (ECF No. 54.)

On June 22, 2023, I issued a Rule 5 order, providing preliminary guidance to the parties.  (ECF No. 47.)  In pertinent part, I advised petitioner to pursue a cause-in-fact claim, which would likely be based on significant aggravation of her preexisting shoulder dysfunction.  (*Id.* at 1-2.)  In August of 2023, petitioner filed an expert report by orthopedic surgeon Jerome G. Piontek, M.D., as well as accompanying medical literature.  (ECF Nos. 49-50; Exs. 17-23.)  Respondent filed a responsive expert report by orthopedic surgeon Geoffrey D. Abrams, M.D., as well as accompanying medical literature, in December of 2023.  (ECF Nos. 53, 59; Exs. A-B.)  Thereafter, the parties filed another round of expert reports.  (Exs. 24, C.)  On August 12, 2024, petitioner filed a motion for ruling on the written record pursuant to Vaccine Rule 8(d).  (ECF No. 64.)  Respondent filed his response on September 30, 2024, and petitioner filed her reply on October 15, 2024.  (ECF Nos. 66-67.)

On December 18, 2024, petitioner filed the instant motion seeking an award of interim attorneys' fees and costs.  (ECF No. 68.)  New counsel of record was thereafter

---

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

substituted for Mr. Downing.[3]  Respondent filed his response to petitioner's motion on January 15, 2025, and petitioner filed her reply on January 17, 2025.  (ECF Nos. 71-72.) Petitioner's motion for interim attorneys' fees and costs is now ripe for resolution.

## II.    Party Contentions

In the instant motion, petitioner explains that counsel of record at the time, Mr. Downing, is discontinuing practice in the program in order to accept an appointment to a position within the government.  (ECF No. 68, p. 2.)  She requests an interim attorneys' fees and costs award of $49,190.84, constituting $34,489.50 in attorneys' fees and $14,701.34[4] in costs.  (*Id.* at 19.)  The motion also incorporates the prior interim attorneys' fees and costs request of $18,581.51, constituting $17,921.30 in fees and $660.21 in costs, to be paid to petitioner's prior counsel, Mr. Brazil.  (*Id.* at n.2; ECF No. 41, p. 2.)

In response, respondent argues that petitioner's claim lacks a reasonable basis. (ECF No. 71, p. 17.)  With regard to petitioner's SIRVA claim, respondent asserts that Dr. Piontek made broad conclusions and primarily relied on petitioner's own subjective reports, which are contradicted by contemporaneous medical records.  (*Id.* at 18-19.) He further asserts that petitioner indisputably suffered from preexisting shoulder pain and dysfunction, and that her pre- and post-vaccination conditions reflect a chronic cervical and shoulder pathology.  (*Id.* at 19-25.)  He thus contends that petitioner cannot prove that her injury was limited to the shoulder in which the vaccine was administered or that no other condition or abnormality explains her condition.  (*Id.* at 26-29.)  He further disputes onset, primarily relying on petitioner's first post-vaccination encounter, during which a "multiple month history of insidious onset of right shoulder pain" was noted.  (*Id.* at 25 (citing Ex. 2, pp. 9, 12-13).)  Regarding a cause-in-fact claim, respondent asserts that petitioner has neither alleged a specific shoulder injury, apart from SIRVA, nor presented a causal theory connecting her specific shoulder injury to the subject vaccination.  (*Id.* at 30-33.)  He claims that any significant aggravation claim lacks reasonable basis for the same reasons.  (*Id.* at 33-34.)

Petitioner's reply emphasizes that her expert is a board-certified orthopedic surgeon who offered "well-reasoned opinions" supporting petitioner's right-sided SIRVA claim and rebutting respondent's expert's opinions.  (ECF No. 72, pp. 2-3.)  She further cites medical records in which petitioner attributed her shoulder symptoms to her vaccination, as well as medical records containing a history of present illness associating the vaccination with petitioner's shoulder symptoms.  (*Id.* at 4-5 (citing Ex. 2, p. 13; Ex. 3, pp. 16, 21, 26, 36-37).)  Thus, petitioner argues that "this record clearly supports finding that both [good faith and reasonable basis] exist."  (*Id.* at 8.)  She also

---

[3] Initially, Wendy Cox was substituted for Mr. Downing; however, Courtney Jorgenson was subsequently substituted as counsel of record.  (ECF Nos. 70, 73.)  Both are associated with the same firm.

[4] In her motion, petitioner states that Mr. Downing incurred $17,701.34 in total litigation costs.  (ECF No. 68, p. 19.)  However, review of the itemized billing records reveal that Mr. Downing's actual costs totaled $14,701.34.  (*Id.* at 34.)

notes that respondent offered no specific objection to the reasonableness of the hourly rates requested or the amount of hours billed.  (*Id.*)

## III.    Analysis

### a.  An Award of Interim Attorneys' Fees and Costs is Appropriate

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and . . . other costs."  § 300aa-15(e)(1)(A)-(B).  Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).  Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act, although there is no presumption of entitlement to such fees.  *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1374-75 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352; *McKellar*, 101 Fed. Cl. at 300.  In *Shaw*, the Federal Circuit clarified that, "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d at 1375.  The fact that an attorney is withdrawing may be a circumstance that warrants an interim award, but it is not necessarily so.  *Compare Wood v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), *with McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 302 (2011).

"Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" when he or she holds an honest belief that a vaccine injury has occurred.  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Here, respondent does not challenge the "good faith" requirement (ECF No. 71, p. 1), and there is no reason to question petitioner's good faith belief that she has suffered a vaccine injury.

Instead, respondent argues that petitioner's request for interim attorneys' fees and costs should be denied for lack of reasonable basis.  (ECF No. 71, pp. 1, 17.) "Reasonable basis" is an objective standard, *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020), which "may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).  Although reasonable basis for a claim may have existed at the time the petition was filed, it may subsequently be determined that there is no reasonable basis for the claim if further record development reveals that the claim lacks merit.  *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("[W]hen the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith.").  The burden is on petitioner

4

to affirmatively demonstrate a reasonable basis for her claim.  *McKellar*, 101 Fed. Cl. at 305.  Petitioner must present "more than a mere scintilla but less than a preponderance of proof" to satisfy her burden.  *Cottingham*, 971 F.3d at 1346.

In her petition, petitioner alleged that she suffered a right-sided SIRVA as a result of her July 11, 2018 Tdap vaccination.  (ECF No. 1.)  Accompanying the petition, petitioner filed medical records that provide at least some objective evidence to support her claim.  For instance, petitioner filed a record of vaccination demonstrating that a Tdap vaccine was administered intramuscularly in her right deltoid on July 11, 2018.  (Ex. 1.)  She also presented contemporaneous medical records to support that she complained of shoulder symptoms following vaccination and that she associated those symptoms with the subject vaccination.  (*See, e.g.*, Ex. 2, p. 13 (handwritten new condition form, submitted on July 20, 2018, reporting "extreme pain in arm" with a date of injury listed as July 11, 2018 and a date of onset listed as "7/11/2018 – tetanus shot"); Ex. 3, p. 26 (July 23, 2018 orthopedist encounter noting right shoulder pain that "began on 7/11/2018 after a tetanus shot").)  Petitioner also filed an affidavit supporting her claim.  (Ex. 8.)  After respondent contested petitioner's showing with regard to all four of the Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA in his Rule 4 report (ECF No. 29), and I suggested in the Rule 5 order that petitioner "will need to file an expert report to support a cause-in-fact claim in this case, likely based on significant aggravation" (ECF No. 47, p. 2), petitioner submitted an expert report by Dr. Piontek, along with accompanying medical literature, supporting her claim.  (Exs. 17-23.)  Dr. Piontek has been a board-certified orthopedic surgeon since 1988, and he maintained an active clinical practice in orthopedic surgery for over thirty-five years before eventually retiring.  (Ex. 18; Ex. 17, p. 1.)  He averred that, throughout his career, he treated thousands of patients with shoulder injuries and administered thousands of shoulder injections.  (Ex. 17, p. 1.)  As such, Dr. Piontek is qualified to opine on the alleged shoulder injury.

Although respondent's expert, also a board-certified orthopedic surgeon, opined that petitioner suffered from cervical spine pathology, this competing medical opinion does not necessarily defeat reasonable basis.  Prior program cases have litigated the distinction between SIRVA and cervical radiculopathy.  *See, e.g.*, *Layne v. Sec'y of Health & Human Servs.*, No. 18-57V, 2022 WL 3225437, at *17-22 (Fed. Cl. Spec. Mstr. July 12, 2022) (concluding that the petitioner's cervical radiculopathy defeated her Table claim, but not her cause-in-fact claim); *Truett v. Sec'y of Health & Human Servs.*, No. 17-1772V, 2022 WL 17348386, at *16-23 (Fed. Cl. Spec. Mstr. Nov. 1, 2022) (concluding that the petitioner's condition was best explained as cervical radiculopathy unrelated to vaccination, defeating both her Table claim and her cause-in-fact claim).  Even where petitioners have ultimately failed to distinguish a shoulder injury from cervical radiculopathy, they have still been able to recover attorneys' fees and costs.  *See, e.g.*, *Durham v. Sec'y of Health & Human Servs.*, No. 17-1899V, 2024 WL 4369198 (Fed. Cl. Spec. Mstr. Sept. 6, 2024); *Truett v. Sec'y of Health & Human Servs.*, No. 17-1772V, 2024 WL 795176 (Fed. Cl. Spec. Mstr. Jan. 29, 2024).  Here, without forecasting whether petitioner will ultimately be entitled to compensation or not, there is

sufficient evidence within petitioner's medical records and expert submission to support a reasonable basis for the claim.

Additionally, although an attorneys' withdrawal is not inherently an undue hardship that triggers an award of interim attorneys' fees and costs, *McKellar*, 101 Fed. Cl. at 302, I exercise my discretion to award interim attorneys' fees and costs, given the overall amount at issue, the length of time this case has been pending, and the fact that petitioner's former counsel, Mr. Downing, is winding down his practice. *See Wood*, 105 Fed. Cl. at 154. An award of interim attorneys' fees and costs to petitioner's prior counsel, Mr. Brazil, is also appropriate in light of my prior order deferring ruling on petitioner's prior request pertaining to his work on this case, in which I indicated that such an award would be appropriate when an award was granted for Mr. Downing, "whether on a final or interim basis." (ECF No. 54.)

### b. Reasonableness of the Requested Attorneys' Fees

In determining the appropriate amount to be awarded, the Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1347. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348. It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).

Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Such applications should not include hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In reviewing fee applications, special masters need not engage in a line-by-line analysis. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521. Attorneys' costs must also be reasonable and sufficiently documented. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992) ("The conjunction

'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

i.   Downing, Allison & Jorgenson

Petitioner requests an award of $34,489.50 in interim attorneys' fees for work performed by attorneys and paralegals at Downing, Allison & Jorgenson in furtherance of her claim.  (ECF No. 68, p. 19.)  When Mr. Downing was counsel of record, two attorneys at Downing, Allison & Jorgenson participated in the litigation of petitioner's claim: Mr. Downing and Ms. Jorgenson.[5]  (*Id.* at 21.)  Upon review of Mr. Downing's billing records in this case, I find that petitioner's request for fees is reasonable, given the nature of the claim, the procedural history of the case, and counsels' performance. Mr. Downing has been practicing law for a total of 29 years, including over 21 years of experience in the Vaccine program.  (*Id.*)  He billed at an hourly rate of $445.00 for work performed in 2023 and $485.00 for work performed in 2024.  (*Id.* at 22.)  Ms. Jorgenson has been practicing law for a total of 9 years, including 8 years of experience in the Vaccine program.  (*Id.* at 21.)  She billed at an hourly rate of $375.00 for work performed in 2024.  (*Id.* at 22.)  These rates are reasonable and consistent with prior determinations.  *See Druery v. Sec'y of Health & Human Servs.*, No. 17-1213V, 2024 WL 4850668, at *3 (Fed. Cl. Spec. Mstr. Oct. 25, 2024); *Fisher v. Sec'y of Health & Human Servs.*, No. 20-0855V, 2024 WL 3326050, at *2-3 (Fed. Cl. Spec. Mstr. June 10, 2024).  I similarly find that the requested hourly rates of $155.00 and $175.00 for paralegal work performed in 2023 and 2024 are reasonable and consistent with prior awards.  *See Fisher*, 2024 WL 3326050, at *2-3; *Cracraft v. Sec'y of Health & Human Servs.*, No. 20-0562V, 2024 WL 2992939, at *1 (Fed. Cl. Spec. Mstr. May 9, 2024); *Franceschi v. Sec'y of Health & Human Servs.*, No. 21-0468V, 2023 WL 4270835, at *2 (Fed. Cl. Spec. Mstr. May 30, 2023).  Based on my experience, I find the number of hours billed to be reasonable.  Accordingly, Mr. Downing is awarded $34,489.50 in interim attorneys' fees.

ii.   Muller Brazil, LLP

In her prior motion, petitioner requested an award of $17,921.30 in interim attorneys' fees associated with Mr. Brazil's representation in this case.  (ECF No. 41, p. 2.)  Review of Mr. Brazil's billing records demonstrates that petitioner's prior fee request is largely reasonable.  With regard to the requested hourly rate, Mr. Brazil has been litigating civil cases since 2010 and has focused solely on vaccine injury claims since 2013.  (*Id.*)  He billed at an hourly rate of $325.00 for work performed in 2019, $350.00 for work performed in 2020, $375.00 for work performed in 2021, $400.00 for work performed in 2022, and $425.00 for work performed in 2023.  (*Id.* at 1, 5-14.)  I find the requested hourly rates to be reasonable and consistent with prior awards.  *See*

---

[5] The motion suggests that Ms. Allison, a senior litigator at Downing, Allison & Jorgenson with 35 years of legal experience, also represented petitioner in this case; however, there are no billing entries to support such participation.  (ECF No. 68, p. 21.)

*Robinson v. Sec'y of Health & Human Servs.*, No. 20-1378, 2024 WL 4503651, at *2 (Fed. Cl. Spec. Mstr. Aug. 30, 2024); *McGaughey v. Sec'y of Health & Human Servs.*, No. 21-0261V, 2023 WL 4048643, at *2 (Fed. Cl. Spec. Mstr. May 15, 2023).  For paralegal work performed throughout the case, petitioner also requests an hourly rate of $125.00 for work performed by Stacie Bole, Megan McNicholas, Ginny Schaffer, and Erik Pavlacsek, as well as an hourly rate of $165.00 for work performed by Katy Yoos and an hourly rate of $185.00 for work performed by Leigh Finfer.  (ECF No. 41, pp. 1-2.)  Additionally, petitioner requests an hourly rate of $140.00, $150.00, $160.00, and $177.00 for paralegal work performed by Tereza Pavlacsek in 2019, 2020, 2021 through 2022, and 2023, respectively.  (*Id.* at 1, 6-14.)  I similarly find the requested hourly rates for paralegal work to be reasonable and consistent with prior awards.  *See Putman v. Sec'y of Health & Human Servs.*, No. 19-1921V, 2022 WL 2133979, at *2-3 (Fed. Cl. Spec. Mstr. May 12, 2022); *Barton v. Sec'y of Health & Human Servs.*, No. 21-476V, 2024 WL 3177120, at *2 (Fed. Cl. Spec. Mstr. May 28, 2024).

However, while I "need not delve into a 'line-by-line' analysis of the billing records," *Broekelschen*, 102 Fed. Cl. at 729, I find a number of billing entries contained in Mr. Brazil's records to be concerning.  Other special masters have previously reduced paralegal hours billed by Muller Brazil as excessive and pertaining to non-compensable clerical tasks.  *See, e.g.*, *Arnold v. Sec'y of Health & Human Servs.*, No. 15-534V, 2017 WL 3165486, at *2 (Fed. Cl. Spec. Mstr. June 22, 2017); *Foshee-Naughton v. Sec'y of Health & Human Servs.*, No. 17-1366V, 2019 WL 3239281, at *3 (Fed. Cl. Spec. Mstr. June 25, 2019); *Forman-Franco v. Sec'y of Health & Human Servs.*, No. 15-1479V, 2020 WL 7364801, at *2 (Fed. Cl. Spec. Mstr. Nov. 19, 2020); *see also A.W. v. Sec'y of Health & Human Servs.*, No. 15-1568V, 2019 WL 518521, at *2 (Fed. Cl. Spec. Mstr. Jan. 11, 2019) (criticizing Mr. Brazil's billing practices for "consistently inflating billing entries and requesting reimbursement for non-compensable work").  In this case, there are several billing entries for clerical tasks, such as preparing exhibits for filing, preparing compact discs, and e-filing motions.  (*See, e.g.*, ECF No. 41, p. 6 (containing two entries on October 2, 2019, billing 1.10 hours to "Prepare Petition and Exhibits for Filing" and a further 0.20 hours to "E-File Petition and Exhibits").)  These tasks are not compensable in the program.  *See Johnson v. Sec'y of Health & Human Servs.*, No. 18-410V, 2020 WL 4558797, at *4 (Fed. Cl. Spec. Mstr. June 30, 2020); *Floyd v. Sec'y of Health & Human Servs.*, No. 13-556V, 2017 WL1344623, at *5 (Fed. Cl. Spec. Mstr. Mar. 2, 2017).  Accordingly, the nearly 8 hours of paralegal work, totaling $1,297.90, that was billed for conducting these clerical tasks will not be compensated.

Additionally, a substantial number of hours were billed for correspondence between Mr. Brazil and petitioner.  While there can be no question that attorney-client communication is important and necessary for adequate representation of the client's interests, the amount of time spent communicating with the client must also be reasonable.  *Warfle v. Sec'y of Health & Human Servs.*, No. 05-1399V, 2012 WL 4845635, at *30 (Fed. Cl. Spec. Mstr. Sept. 21, 2012); *J.B. v. Sec'y of Health & Human Servs.*, No. 15-67V, 2016 WL 4046871, at *8 (Fed. Cl. Spec. Mstr. July 8, 2016) (reducing as excessive the number of hours billed for communication with petitioner).  A review of the billing records demonstrates that the bulk of time billed by Mr. Brazil for

activity in this case between June of 2021 and April of 2023, just prior to the filing of the interim fees request, was related to back-and-forth communications with petitioner. For instance, in 2022 alone, Mr. Brazil billed a total of 17.7 hours[6] at $400.00 per hour and 8.6 of those hours, totaling $3,440.00, were billed as correspondence with the client. Moreover, the majority of these entries lack sufficient detail to determine whether the communications were strictly necessary to the litigation of this claim. (*See, e.g.*, ECF No. 41, p. 10 (March 7, 2022 billing entries of 0.10 hours to "Draft status update to client," 0.10 hours to "Review email from client re status request," and 0.20 hours to "Review file to draft status update").) Accordingly, I exercise my discretion to reduce the total hours billed by Muller Brazil between June of 2021 and April of 2023 for communication between Mr. Brazil and petitioner by 20%, resulting in a total reduction of $1,120.50.[7]

I find the remainder of the billing entries to be reasonable and sufficiently documented. Accordingly, Mr. Brazil is awarded attorneys' fees in the reduced amount of $15,502.90.

### c. Reasonableness of the Requested Attorneys' Costs

Petitioner requests an award of $14,701.34[8] to be paid to Mr. Downing, as well as $660.21 to be paid to Mr. Brazil, for interim costs incurred to further her claim. (ECF No. 68, p. 19; Ex. 41, p. 2.)

I have reviewed the billing records and find the requested costs to be largely reasonable and sufficiently documented. (ECF No. 68, pp. 34-40; ECF No. 41, pp. 16-23.) Specifically, Dr. Piontek is a board-certified orthopedic surgeon with over thirty-five years of experience in the field. (Ex. 18.) He billed 36.75 hours at $400.00 per hour for reviewing petitioner's medical records and for researching and drafting two expert reports. (ECF No. 68, pp. 34-40.) Although Dr. Piontek does not appear to have any prior program experience, the requested hourly rate is both consistent with what has been awarded to similarly qualified experts in the prior program cases and below what has previously been determined to be the average hourly rate for all orthopedic surgeons practicing in the United States. *See Crawford v. Sec'y of Health & Human Servs.*, No. 19-0544V, 2024 WL 5321766, at *3 (Fed. Cl. Spec. Mstr. Dec. 9, 2024); *Durham*, 2024 WL 4369198, at *3. I also find that the number of hours billed is reasonable for the complexity of the case and the work performed. However, a review

---

[6] An April 4, 2022 billing entry for 0.10 hours to "Review PAR initial order" appears to have been entered in error as it is duplicative of an October 2, 2019 billing entry for 0.10 hours to "Review initial PAR order." (ECF No. 41, pp. 6, 10.)

[7] Regarding communications with petitioner, Mr. Brazil billed a total of 3.5 hours ($1,312.50) in 2021, 8.6 hours ($3,440.00) in 2022, and 2 hours ($850.00) in 2023, for a total of 14.1 hours. After calculating the number of hours billed at the hourly rate for the applicable year, the total billed for attorney-client communication amounts to $5,602.50. A 20% reduction of that figure results in a reduction of $1,120.50.

[8] As previously mentioned, petitioner incorrectly states that Mr. Downing incurred costs totaling $17,701.34, when careful review of the billing records reveal that his costs only totaled $14,701.34. (ECF No. 68, pp. 19, 34.)

of the receipts for costs incurred by Mr. Brazil reveals that there is no record support for a July 28, 2022 billing entry of $7.85 for "Certified Postage." As a result, $7.85 will be deducted from the costs to be awarded to Mr. Brazil.

I therefore award $14,701.34 in interim attorneys' costs to Mr. Downing. I also award interim attorneys' costs to Mr. Brazil in the reduced amount of $652.36.

## IV.   Conclusion

In light of the above, petitioners' application for interim attorney's fees and costs is hereby **GRANTED** and petitioner is awarded interim attorneys' fees and costs in the total amount of **$65,346.10** as follows:

- A lump sum of **$49,190.84**, representing reimbursement of attorneys' fees and costs, to be paid through an ACH deposit to petitioner's former counsel of record, Mr. Andrew Downing's IOLTA account for prompt disbursement; and

- A lump sum of **$16,155.26**, representing reimbursement of attorneys' fees and costs, to be paid through an ACH deposit to petitioner's former counsel of record, Mr. Paul Brazil's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[9] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).