# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-1525V**
**Filed: August 10, 2026**

| | |
|---|---|
| ELIZABETH LUCAS,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Special Master Horner |

*David John Carney, Green & Schafle, LLC, Philadelphia, PA, for petitioner.*
*Rachelle Bishop, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On October 2, 2019, petitioner, Elizabeth Lucas, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq*. (2012), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of a tetanus-diphtheria-acellular pertussis ("Tdap") vaccination she received on July 11, 2018. (ECF No. 1.) On August 26, 2025, petitioner was found entitled to compensation for a significant aggravation of pre-existing shoulder dysfunction, rather than a SIRVA. (ECF No. 78.)

After petitioner was found entitled to compensation, the parties were unable to informally resolve the appropriate amount of compensation. The issue of damages was fully briefed. (ECF Nos. 91, 93-94.) Petitioner requested $190,000.00 in compensation for her actual pain, suffering, and emotional distress. However, respondent instead proposed an award of $122,500.00. No other damages were asserted. An oral argument was held on July 22, 2026, and the undersigned issued an oral ruling as part

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

of that proceeding. An excerpt of the resulting transcript including the oral ruling is attached hereto. In light of the preceding, I have determined that the parties have had a full and fair opportunity to present their cases and that it is appropriate to resolve damages on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *see also Kreizenbeck v. Sec'y of Health & Human Servs*., 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record"). Considering the arguments raised by the parties and the record as a whole, I find for the reasons discussed in the attached transcript that a reasonable and appropriate award for petitioner's actual pain and suffering is $150,000.00.

Therefore, **I award petitioner a lump sum payment of $150,000.00 representing compensation for actual pain and suffering, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement to petitioner**. This amount represents compensation for all damages available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[2]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

SPECIAL MASTER'S RULING

THE COURT: So, for purposes of this ruling on damages, I incorporate by reference the legal standard I articulated in my prior decision in Baker v. Secretary of Health and Human Services, which is Number 21-1971V 2025 WL 1695810 at page 5. That's Special Master Decision of May 23rd, 2025.

Just very briefly, that standard is that there's no formula to assess pain and suffering. Factors typically considered include severity, duration, awareness. However, awareness is not really relevant to SIRVAs, so we focus primarily on severity and duration of the pain and suffering. It is appropriate for special masters to consider other prior awards, though they are not binding.

I just want to list for the record the cases the Petitioner has cited as comparable. There's a case Mavin, 20-1591V, that awarded $175,000; Pruitt, 17-757V, awarding $185,000; Meirndorf, 19-1876V, awarding $200,000; Shiver, 21-1961V, awarding $190,000.

As we mentioned in the oral argument just now, the Petitioner also cites Angerosa, 22-1022V, and Werning, 18-267V, not as direct comparables, but for the proposition that those two cases which were awarded $165,000 and $160,000 respectively represent something of a de facto floor for surgical cases in SIRVA. And then also Petitioner

cited Welch, 18-74V, as a case with three surgeries, awarded $210,000 which sort of represents the other end of the spectrum from Werning and Angerosa. Respondent did not cite any additional cases as comparable. He based his argument on distinguishing the cases that the Petitioner cited.

So, I'm mindful of all of these decisions, but I'm not basing the decision on any one prior decision. There are a lot of aspects of the Petitioner's history that speak to this duration and severity of pain and suffering. That's going to include, as counsel have already touched upon, not just the total duration of the treatment, but subjective pain ratings, how long and how severe were reductions in range of motion, the length of the treatment history, surgeries, their outcomes, prognosis, MRI and surgical findings can be relevant. The outcome and modalities of treatment such as steroids, physical therapy. There's a whole host of things.

So, in that regard, I do also just want to note that the ruling on entitlement has a more detailed description of Petitioner's clinical course both pre- and post-vaccination. And I do find that history as I laid it out in the ruling on entitlement to be germane, and so I do incorporate it by reference. And that can be found at 2025 WL 2718249, it's a decision dated August 26, 2025.

So, with all of that being said, an important

additional consideration in this particular case, as we discussed in the oral argument, is the fact that the ruling on entitlement was based on significant aggravation. So, given that context, Respondent has stressed that all of the comparable cases cited by Petitioner are inherently distinguishable in that they addressed new SIRVAs rather than significant aggravation of preexisting injury. And that's located in the party briefs at ECF Number 93, pages 23 to 24.

So, I agree with Respondent on that point. A significant aggravation of preexisting already symptomatic shoulder complaints is not an apples-and-apples comparison with a new SIRVA. And as I discussed at greater length with parties during the oral argument, the Petitioner's reply at ECF Number 94, pages 3 and 5, I think is a good framing of the damages issue in this case. And I think it is consistent with that understanding that all else being equal, a significant aggravation claim needs to be somewhat discounted relative to what an otherwise comparable SIRVA award would look like.

So, regarding the specific comparables that Petitioner has cited in this case, I did notice in Respondent's response at ECF 93, page 26, the Respondent does agree that the Pruitt case cited by Petitioner, "Reflects a somewhat similar treatment course of two

arthroscopic surgeries, three steroid injections, three MRIs, and 14 PT sessions over four years". So, based on that and based on my own review of the complete record evidence, if not for the fact that a downward adjustment is appropriate to account for significant aggravation, I otherwise would agree that pain and suffering in the neighborhood of $185,000 would be reasonable by comparison to Pruitt.

However, I think Respondent makes compelling points in terms of what that downward adjustment needs to look like. In particular, I think Respondent argues that there is clear evidence that a portion of Petitioner's ongoing post-vaccination symptoms were due to her preexisting condition. I take particular note of Respondent's reliance on the qualified medical re-evaluation performed by Dr. Fonseca in the context of Petitioner's workers' compensation claim that was conducted in September of 2019. Respondent cites that at page 19 of his brief. The evaluation is at Exhibit 14, page 190. The evaluation is several pages long, but the apportionment portion of the evaluation is at page 190, and I did specifically incorporate that evaluation into the ruling on entitlement.

So, the apportionment that Dr. Fonseca made was that with regard to Petitioner's right extremity symptoms, it was 40 percent related to her August 2015 workplace

injury, which was a cervical spinal injury, and 60 percent related to other causes. That apportionment is neither binding nor dispositive and it is only one physician's view, but I do think it is pretty strong evidence that it supports Respondent's position. And I want to stress that the evaluation came between Petitioner's two surgeries. So, it really is right in the midst of her clinical course of her post-vaccination significant aggravation.

And in particular, I think it's important to note that Dr. Fonseca's record documents that he was aware of her interval history that included her increased right shoulder complaints that led to her first surgery. And you can see that that's reflected in Exhibit 14 at pages 154 and 155. And the evaluation is very thorough in terms of her history, her subjective and objective complaints, and he had reviewed her orthopedic records. So, Dr. Fonseca had a pretty good knowledge base of Petitioner's ongoing condition at the time that it was concluded that 40 percent of her condition was related to her cervical spinal condition.

Now, just for purposes of illustration, I note that if you take Petitioner's request of $190,000 and you applied a 40 percent reduction based on Dr. Fonseca's apportionment, you would actually end up with an award that was lower than what Respondent is proposing. It's about $114,000. And in doing so, you would even be assuming that

all of that remaining 60 percent was compensable, whereas, in reality, we know that some combination of Petitioner's presentation was a mix of her preexisting shoulder pathology and the aggravation. So, I raise that as an illustration just to underscore the seriousness with which I take Respondent's assessment of the damages. I'm not going to apply that 40 percent reduction in that sort of manner. It's just an illustration.

I also note, in terms of the arguments that Respondent makes that have merit, is Respondent's observation that the range of motion findings were not significantly worse post-vaccination. Respondent made that argument in the motion response pages 20 and 21. Petitioner argued in the reply, "That this was expressly considered and rejected by the Court as dispositive in determining whether significant aggravation occurred". That's at ECF 94, page 7.

Both parties are right here. Petitioner's correct that the range of motion findings are not dispositive over whether there was a significant aggravation. But it's also the case that degree of loss of range of motion is routinely among the factors that are considered in assessing the severity of pain and suffering in SIRVA damages. So, I think Respondent is reasonable in bringing up that fact, even though it doesn't necessarily imply that there was no

significant aggravation. Those are the points that I think particularly favor Respondent's view.

A counterpoint to that that was raised by Petitioner, is the argument that Mr. Bernstein was reraising in oral argument today, which is the idea that two surgery cases are inherently higher value. And in particular he noted, or the briefing notes, citing to Werning and Angerosa, a floor of about $160,000. So, I want to note that I did consider a similar argument in a prior case. That case was Ratzlaff, 18-1017V, 2023 WL 4072909, a Special Master decision of May 24th, 2023. And I'm going to read a quote from that at page 7 of that decision. Again, internal citations omitted.

"I agree with Respondent that the number of surgeries alone is not a metric that instructs any specific dollar amount in preference to a holistic review of Petitioner's medical history. Nonetheless, as Petitioner observes in reply, it is also the case that surgeries are in themselves bodily traumas with recovery periods that contribute to pain and suffering." So, I think that reasoning applies in this case.

I do not accept the argument that $160,000 represents any kind of hard-and-fast threshold for surgical cases, but I do acknowledge that multiple-surgery cases in general do end up being above that amount. And I also

acknowledge that I think it's implicit from the ruling on entitlement that I did find that the vaccination, the vaccine-caused injury was a but-for cause of the two surgeries. So, that's, I think, a significant confounding issue that would prevent any direct application of Dr. Fonseca's apportionment to the damages in the vaccine injury case. And in particular, I think it's notable that although I stress that Dr. Fonseca was aware of the first surgery, his evaluation occurred before the second surgery.

So, ultimately, when I put all of that together, I note that Petitioner argues that Respondent, "Improperly centers Petitioner's baseline condition rather than the change from that baseline", and that "Respondent's continued focus on preexisting findings attempts to revisit an issue the Court has already resolved and does not alter the conclusion that Petitioner's condition materially worsened". I don't find that to be a persuasive characterization of Respondent's argument.

Understanding Petitioner's baseline, I think, is part and parcel of understanding the change from the baseline. So, I think Respondent's framing of the issue, I don't think it's either unexpected or inappropriate. I also do not agree that Respondent is seeking to revisit the findings underlying the ruling on entitlement. And I don't think that the amount that Respondent proposed is inherently

reflective of that kind of an effort.

However, I do agree with Petitioner that her multiple surgeries, which again, I stress, I found were caused by the vaccine injury, deserve added consideration in Dr. Fonseca's apportionment that was made prior to the second surgery.

So, considering the record as a whole, balancing the parties' arguments, and recognizing that placing a dollar value on pain and suffering can only do rough justice, I find that a reasonable and appropriate reward for Petitioner's actual pain and suffering is $150,000.

All right. So, I anticipate that I will incorporate this ruling into a formal decision so that we can have the parties presented their opportunity to seek review and to ultimately have judgment entered and the award determined. And with that, I'm going to go ahead and go off the record.

(Whereupon, at 3:34 p.m., the proceedings were adjourned.)